**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| MARIA MOLINA, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | No. EP-11-CV-0028-FM |
| | § | |
| DSI RENAL, INC., | § | |
| | § | |
| *Defendant*. | § | |

**PLAINTIFF'S RESPONSE TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**TO THE HON. FRANK MONTALVO, UNITED STATES DISTRICT JUDGE:**

Comes now MARIA MOLINA, Plaintiff, and files this her Response to Defendant's

Motion for Summary Judgment, and would show the following:

Maria Molina had and continues to have a serious physical impairment of her back that

substantially limits her ability to stand, sit, lift, and sleep.  Under The Americans With

Disabilities Amendments Act of 2008, and corresponding Texas amendments – she is disabled.

Despite her disability, she continually performed all of the essential functions of her position.

Even though her physicians imposed lifting restrictions at various points during her employment,

she remained able to do her job, as both she and her supervisor confirm.  Beginning in late 2009,

her condition worsened.   Unfortunately, Defendant adopted a policy that it would not

accommodate any physical restriction of any employee, regardless of whether it affected their

ability to perform their job duties.  In essence, Defendant adopted a "zero tolerance" policy on

accommodating disabled workers.   Molina was placed on an involuntary medical leave, and then

terminated, even though both she and her supervisor agree that she was able to successfully

perform the essential duties of her position and posed no danger to herself or anyone else.

Because this decision was unlawful disability discrimination, Molina filed this suit.

Pursuant to Local Rule CV-7(b), the facts supporting this response are included in Plaintiff's Appendix. Defendant's motion for summary judgment should be denied.

## A.      Summary Judgment Standard

A motion for summary judgment is properly granted only if there is no genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is material if its resolution could affect the outcome of the action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing a motion for summary judgment, the Court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods. Co.*, 530 U.S. 133, 150 (2000). The Court must disregard all evidence favorable to the moving party that the jury is not required to believe. *Id.*

## B.      The evidence raises genuine fact issues on whether Plaintiff is disabled.

Defendant's summary judgment motion argues at length that Molina is not disabled. However, the evidence establishes that she is substantially limited in her ability to perform the major life activities of standing, sitting, lifting, and sleeping. Defendant's analysis relies on caselaw pre-dating the ADA Amendments Act of 2008 (ADAAA) and corresponding Texas-law amendments, which apply to this case, and its analysis is inconsistent with the ADAAA.[1] The ADAAA was  enacted to lower the standard of functional limitation necessary to show that a

---

[1] The ADAAA had an effective date of January 1, 2009, and had only prospective application. Pub.L. no. 110-325, 122 Stat. 3553 (2008); *see Carmona v. Southwest Airlines*, 604 F.3d 848, 857 (5th Cir. 2010). Texas adopted corresponding amendments to the TCHRA, effective September 1, 2009. 2009 Tex.Gen.Laws 868; *see Munoz v. Ecosphere*, 2010 WL 2838356 at *10 (W.D. Tex. 2010). Defendant's argument cites a few cases decided after January 1, 2009, but they all involved job actions prior to 2009, and one of them, *Hartup*, emphasized the prospective nature of the ADAAA. *See Hartup*, 2009 WL 2776386 at *12-14.

person is disabled.  *See* 29 CFR § 1630.2(j)(1)(iv).  Under current law, the evidence raises a fact question as to whether Molina is disabled.

A person is "disabled" within the meaning of the TCHRA if she has a physical impairment that substantially limits her ability to perform a major life activity.  Tex.Lab.Code § 21.002(6).  The Texas Legislature, following the ADAAA, has mandated that the term "disability" shall be construed in favor of broad coverage.  Tex.Lab.Code § 21.0021.  Whether an individual is disabled should not demand extensive analysis; the focus should be on whether discrimination has occurred, not whether a person's impairment limits a major life activity.  29 CFR § 1630.2(j)(1)(iii).

Molina testified that she began experiencing the effects of her serious back condition  in 2004, and that this condition worsened in late 2009.  (Molina dep. p. 53, 55, 165, 177).  In October 2009, her pain was so severe that she had to leave work and go to the emergency room. (Molina dep. p. 179-81).  Her symptoms included sciatica, or pain shooting down her leg, and numbness or tingling in her foot.  (Molina dep. p. 165).  The amount of pain varied day-by-day and week-by-week.  (Molina dep. p. 53-54, 165).  It also varied as to whether it hurts when she is standing, sitting, or trying to get up.  (Molina dep. p. 53-54).   Her physician noted her intermittent pain could last several hours; lateral pelvic sharp burning pain; and sharp right leg pain.  (Molina dep. p. 178 & ex. 35).  Molina's physician diagnosed her with lumbago, lumbar internal disc derangement, and lumbar radiculopathy.  (Molina dep. p. 178-79 & ex. 35).

The pain substantially limits Molina's ability to stand; there are times when her pain becomes aggravated while standing, and she has to rest or sit down.  (Molina dep. p. 167-68).  It also substantially limits her ability to sit; there are times when she has been sitting too long, and has to stand, stretch or move.  (Molina dep. p. 167-68).  It substantially limits her ability to carry

3

things, because there are times when she would have severe pain doing so.  (Molina dep. p. 167-68).  It substantially limits her ability to bend and lift.  (Molina dep. p. 167-68).  It also substantially limits her ability to sleep, as the pain is sometimes so severe when she is sleeping that she has to wake up and get out of bed.  (Molina dep. p. 167-68).

Under the ADAAA, the term "major life activity" is not interpreted to create a demanding standard for disability.  29 CFR § 1630.2(i)(2).  Standing, lifting, bending, sitting, and sleeping are major life activities.  Tex.Lab.Code § 21.002(11-a); 29 CFR § 1630.2(i)(1)(i).  Major life activities also include "the operation of a major bodily function," which includes musculoskeletal functions. Tex.Lab.Code § 21.002(11-a); 29 CFR § 1630.2(i)(1)(ii).

"Substantially limits" is also not to be interpreted as a demanding standard.  29 CFR § 1630.2(j)(1)(i).  An impairment does not need to prevent or even significantly restrict an individual from performing a major life activity in order to be considered substantially limiting.  29 CFR § 1630.2(j)(1)(ii).  Pain experienced by a person when performing a major life activity is a pertinent consideration in determining whether they are substantially limited.  29 CFR § 1630.2(j)(4)(ii).  Impairments that are episodic, in remission, or not of long duration are nonetheless disabilities under the broader definition of the ADAAA.  *Patton v. eCardio Diagnostics LLC*, __ F.Supp.2d __, 2011 WL 2313211 at *4 (S.D. Tex. 2011).  The testimony that Molina's impairment substantially limited her ability to stand, sit, lift, and sleep, and that she experienced severe pain in doing so, sufficiently raises a fact issue for the jury as to whether she is disabled.

Current legal standards were applied to a plaintiff with an impairment similar to Molina's in *Cohen v. CHLN, Inc*., 2011 WL 2713737 (E.D. Pa. 2011).  The plaintiff in that case had been suffering pain due to a back impairment for a period of several months.  Like Molina, he was

diagnosed with lumbar radiculopathy.  The pain affected his ability to walk, climb stairs, and sleep.  Like Molina, he received epidural steroid injections to alleviate the pain, and eventually was scheduled for disc surgery.  The Court held that, under the more inclusive standards of the ADAAA, this evidence allowed a reasonable factfinder to find that the plaintiff was disabled. *Cohen*, 2011 WL 2713737 at *6-*8.

Determining whether any person is disabled requires an individualized assessment.  *Deas v. River West, L.P.*, 152 F.3d 471, 478 (5th Cir. 1998).  It is therefore unsurprising that Defendant can point to cases where other plaintiffs with back impairments, on their specific facts, under prior law, were not disabled.  There are also some pre-ADAAA cases in which plaintiffs with limitations similar to Molina's were found to be disabled.  *See, e.g., Burns v. Coca-Cola Ent., Inc.*, 222 F.3d 247 (6th Cir. 2000) (upholding finding that plaintiff was disabled where back injury prevented him from lifting more than 23 pounds); *Whitfield v. Pathmark Stores, Inc.*, 39 F.Supp.2d 434 (D. Del. 1999) (fact issue existed as to whether plaintiff was disabled, because her back impairment prevented her from standing for long periods of time, lifting more than 20 pounds, bending, or reaching); *Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170 (10th Cir. 1996) (finding fact issue as to whether plaintiff was disabled, where disease prevented her from lifting over fifteen pounds); *Sharp v. McDermott, Inc.*, 1997 WL 538002 (E.D. La. 1997) (plaintiff who was permanently restricted from lifting ten pounds due to disease was substantially impaired in ability to perform a broad range of jobs, and thus disabled).  The evidence in this specific case is that Molina's impairment substantially limited her ability to stand, sit, sleep, and lift, making her disabled as that term is defined by the TCHRA.

Defendant points to the evidence that Molina is able to work and complete her household chores, but this does not establish that Molina is not substantially limited in her ability to

perform major life activities of standing, sitting, lifting, and sleeping.  Defendant seeks to apply pre-2009 caselaw, in which many Courts found that particular individuals were not disabled because their impairments did not limit their ability to work or perform household chores.  In *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002), for example, the Supreme Court ruled that to be substantially limited in performing a major life activity under the ADA, "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives," and so a person who was not able to perform certain repetitive motions, but was able to perform daily household tasks, was not disabled.  However, one express purpose of the ADAAA was to reject this standard.  *See Hartup v. American Standard, Inc*., 2009 WL 2776386 at*13 (N.D. Tex. 2009), *citing* ADA Amendments Act of 2008, Publ. L. 11-325 (2008).  The ADAAA requires the analysis of whether a person is disabled to focus on how a person is limited in their ability to perform a major life activity, not what outcomes they can achieve.  29 CFR § 1630.2(j)(4)(iii).   As stated in the EEOC's regulations implementing the ADAAA, "An impairment that substantially limits one major life activity need not substantially limit other major life activities in order to be considered a substantially limiting impairment."  29 CFR § 1630.2(j)(1)(ix).

Defendant asks this Court to ignore or disbelieve Molina's testimony that her condition substantially limited her ability to perform the major life activities of standing, sitting, lifting, and sleeping.  Under legal standards governing review of motions for summary judgment, this Court can not do so.  The testimony allows a finder of fact to conclude that Molina was disabled because she was substantially limited in her ability to perform major life activities.  Defendant's motion for summary judgment should be denied.

**C.    The evidence raises genuine fact issues on whether Plaintiff was qualified for her job.**

Defendant next argues that, even if she was disabled, Molina was not qualified for her position.  A person is "qualified" for her position if, with or without accommodation, she is able to perform its essential functions.  42 U.S.C. § 12111(8); *see generally LeBlanc v. Lamar State College*, 232 S.W.3d 294, 300 (Tex.App.–Beaumont 2007, no pet.) (applying this ADA definition under TCHRA).  Defendant claims that being able to bend and lift 100 pounds was an essential function of Molina's job, relying particularly on the written job description.  The summary judgment evidence raises fact issues as to this claim.

Molina testified that she never had to lift a hundred pounds by herself during the seven years of her employment.  (Molina dep. p. 175).  She is a petite, 47-year-old woman.  (Molina dep. p. 175-76).  In fact, she rarely had to lift more than 20 pounds; this occurred only about once a month, when she had to perform a particular discrete duty.  (Molina dep. p. 45).  When patients needed to be lifted to the dialysis chair, Molina would use a Hoyer lift, or would obtain assistance of another technician or a nurse.  (Molina dep. p. 40-41).  She never had to lift a patient by herself.  (Molina dep. p. 41, 48).  It was common in the workplace for coworkers to assist each other in lifting.  (Molina dep. p. 175).  The technicians worked as a team, and always assisted each other in transferring patients.  (Molina dep. p. 46-47).  Loya agrees that he has seen coworkers help each other in lifting or with whatever other accommodations they need.  (Loya dep. p. 16).

Defendant relies largely on the written job description.  However, that description does not support the argument that lifting 100 pounds is an essential function of the position.  That

document has a specific section entitled "Essential Duties and Responsibilities."[2]   (Molina dep. ex. 9 p. 1-2).  It lists sixteen "essential" duties in this section; lifting is not one of them.  (Molina dep. ex. 9 p. 1-2).  The portion of the job description referring to physical demands references lifting with assistance, such as with the help of coworkers or a Hoyer lift; it never states any requirement that employees lift a certain amount of weight by themselves or without a tool to do so.  (Molina dep. p. 198-99 & ex. 9 p. 3).

Moreover, DSI's job description for Molina's position affirmatively states that the company is committed to providing accommodations to workers with disabilities.  Specifically it states that "Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions."  (Molina dep. p. 197-98 & ex. 9 p. 2).  And the specific section of the job description listing physical demands, including lifting 100 pounds with assistance, reiterates that "Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions."  (Molina dep. p. 198 & ex. 9 p. 3).

During various periods of her employment, including in 2005, 2006, and 2009, Molina had physician-imposed lifting restrictions.  During each of these times, Molina's supervisor, Mr. Loya, was informed of these restrictions.  (Loya dep. p. 53, 54-55).  Despite the restrictions, on each of these occasions, she was able to keep working and perform her essential job duties.  (Molina dep. p. 55, 171-74).   Furthermore, Loya testified he was able to accommodate those restrictions.   (Loya dep. p. 53-54, 56).   He did not express any concerns about Molina performing her essential job duties with the lifting restriction.  (Molina dep. p. 172).  Neither Loya nor anybody else ever indicated that there was a problem with the lifting restriction or that it would interfere with her ability to perform her job duties.  (Molina dep. p. 171-174).  Neither

---

[2] Although Defendant attaches several iterations of the job description, Plaintiff will

Loya nor anybody else ever expressed a concern that Molina would be any kind of threat to her own safety, or the safety of patients, and neither she nor her patients were in danger. (Molina dep. p. 172, 174).

This was also true in the last two months before Molina was placed on involuntary leave, in November and December 2009. Molina informed Loya of the lifting instruction imposed by her physician at that time. (Molina dep. p. 81, 184; Loya dep. p. 72). Even with the restrictions imposed by her doctor, Molina was able, if necessary, to lift a patient with the help of a coworker or a Hoyer lift. (Molina dep. p. 199). She was able to perform her job duties, she did not do her job any differently, and her performance was not affected by the restriction. (Molina dep. p. 82, 86-87, 186-87). Throughout this time, neither Loya nor anybody else questioned the lifting restriction. (Molina dep. p. 185). Nobody suggested to Molina that with the restriction, she was placing herself or patients in danger. (Molina dep. p. 186).

Loya admits in his testimony that throughout the time of Molina's employment, even when she was under a doctor's care with workplace restrictions, he never observed Molina being unable to perform her essential job duties. (Loya dep. p. 57). When she was working with restrictions, she was never a threat to herself or to the patients. (Loya dep. p. 58). Loya would not have allowed her to work if she was a threat to the safety of patients or to herself. (Loya dep. p. 58).

This testimony allows a reasonable jury to conclude that Molina could perform her essential job duties. Lifting 100 pounds unaided was not an essential function of the position, or one that could not be accommodated. With respect to bending, Defendant points to no evidence at all that any limitation on Molina's ability to bend prevented her from having sufficient range

---

focus on the latest one.

of motion to perform her essential job duties.  The evidence raises fact issues for the jury precluding summary judgment, and Defendant's motion should be denied.

**D.    The evidence raises genuine fact issues on whether Defendant failed to accommodate Plaintiff's disability.**

Defendant moves for summary judgment on Plaintiff's claim that Defendant failed to accommodate her disability.  First, it argues that she did not request any accommodation. However, the testimony pointed to in Defendant's motion, indicating that Molina did not request any accommodation from Loya, refers to the fact that lifting over 100 pounds was not actually an essential function of the position, so no accommodation was needed.

In fact, Molina did request an accommodation, because she asked that she be allowed a part-time schedule on Mondays and Wednesdays temporarily, in order to be able to attend medical appointments until her back condition was repaired.  (Molina dep. p. 70-71, 77, Loya dep. p. 73-74).  Loya knew that she was requesting part-time work because of her medical issues and her back condition.  (Loya dep. p. 74).  A "reasonable accommodation" may include part-time or modified work schedules.  42 U.S.C. § 12111(9)(B).  Once Molina made this request, Defendant had the responsibility to engage in the interactive process to find an appropriate accommodation.  *Taylor v. Principal Financial Group, Inc*., 93 F.3d 155, 165 (5th Cir. 1996). Defendant is not entitled to summary judgment on its claim that Molina never requested any accommodation.

Additionally, after she was placed on involuntary leave, Molina had another conversation with Spencer on January 29. (Molina dep. p. 107-08).  She asked why she could not return to work with restrictions.  (Molina dep. p. 107).  Spencer told her that she could not do so, in case she was unable to help a patient.  (Molina dep. p. 107).  Molina disagreed, pointing out that she had never had a problem working with restrictions in the past, and the technicians always worked

as a team and helped each other.  (Molina dep. p. 108-09).  Molina's request to Spencer to allow her to return to work with her restrictions, allowing employees to work as a team as they had before, was another request for accommodation of her disability, placing the burden on Defendant to at least engage in the interactive process.  The evidence raises genuine fact issues precluding summary judgment on Defendant's claim that Molina requested no accommodation.

Defendant further argues that no reasonable accommodation existed.  However, it was able to grant the accommodations of part-time work and permitting Molina to work despite her restrictions for two months, in November and December 2009, before its corporate officers decided to implement Defendant's "zero tolerance" policy against accommodating any impairment or restrictions.  (Loya dep. p. 88).  During this time, Molina was able to perform her job duties, she did not do her job any differently, and her performance was not affected by the restriction.  (Molina dep. p. 82, 86-87, 186-87).  Even with the restrictions imposed by her doctor, Molina was able, if necessary, to lift a patient with the help of a coworker or a Hoyer lift.  (Molina dep. p. 199).  The job description requires no more; it states that an employee must be able to lift heavy weights with assistance or with the Hoyer lift.   (Molina dep. ex. 9 p. 3).  Throughout this time, neither Loya nor anybody else questioned the lifting restriction.  (Molina dep. p. 185).  Nobody indicated to Molina that DSI did not allow part-time work.  (Molina dep. p. 186).  Nobody suggested to Molina that with the restriction, she was placing herself or patients in danger.  (Molina dep. p. 186).

Loya admits that Molina had been able to perform all of her duties with the same restrictions from October 2009 forward.  (Loya dep. p. 99).  He agrees that DSI made no effort to accommodate those restrictions.  (Loya dep. p. 104-05).  The evidence raises fact issues allowing a jury to find that the accommodations of granting Molina a part-time schedule until her back

was repaired and allowing her to work with restrictions, just as she had in the past, were reasonable and feasible. Defendant's motion for summary judgment should be denied.

**E.     The evidence raises genuine fact issues on whether Plaintiff's disability was a motivating factor in her termination.**

**1.     The motivating factor standard of causation.**

Defendant also seeks summary judgment on Plaintiff's claim that her disability was a motivating factor in her termination.  The relevant causation standard in cases under the TCHRA does not require the employee to prove that his or her race, color, disability, religion, sex, national origin, or age was the sole reason or even a substantial reason for the employment action.  *Quantum Chemical Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex. 2001).  Instead, the employee only has to show that his or her protected characteristic was a motivating factor in the employer's decision.  *Id.*   Regardless of what other factors may have also motivated the employer's action, illegal discrimination occurs if the employee's disability was a factor in its decision.  *Id.*  The summary judgment evidence raises fact issues precluding summary judgment on this claim.

**2.     Summary judgment should be denied based on direct evidence of discrimination.**

Defendant's motion for summary judgment on disability discrimination focuses on the *McDonnell-Douglas* burden-shifting analysis.  This paradigm exists to allow plaintiffs to prove discrimination by circumstantial evidence when direct evidence of discrimination is unavailable. *See Rizzo v. Children's World Learning Center, Inc.*, 84 F.3d 758, 762 (5th Cir. 1996). In the rare situation in which direct evidence establishes discrimination, it is not necessary to apply the mechanical formula of *McDonnell Douglas* to establish discrimination by circumstantial evidence or inference.  *Moore v. USDA* , 55 F.3d 991, 995 (5th Cir. 1995).

This case, like *Rizzo*, presents direct evidence of discrimination.  In *Rizzo*, an employer denied an employee a position because of her impairment, specifically because she was deaf. Like Defendant, it tried to argue that the impairment made the employee unqualified for her job. Like Defendant, it relied on hypothetical speculation that the plaintiff's condition posed some kind of danger, rather than evidence that she was truly a threat to herself or others.  After determining that the evidence raised fact issues as to the plaintiff's qualifications, the Fifth Circuit found that the employer's admission that it took the job action because of her impairment constituted direct evidence of discrimination.  *Rizzo*, 84 F.3d at 762.

Likewise, Defendant involuntarily placed Molina on leave specifically because of her impairment.  The decision had nothing to do with her ability to perform the job.  She successfully performed her duties despite her impairment, and did not pose any threat of danger to herself or anyone.  Her supervisor admits that throughout the time of her employment, even when she was under a doctor's care, he never observed her being unable to perform her essential job duties.  (Loya dep. p. 57).  When she was working with restrictions, she was never a threat to herself or to the patients.  (Loya dep. p. 58).  He would not have allowed her to work if she was a threat to the safety of patients or to herself.  (Loya dep. p. 58).  Defendant simply decided to place her on leave, then to not allow her to return from leave, based on fear and suspicion arising from her medical condition.  This is exactly the type of prejudiced decision that the laws prohibiting disability discrimination are intended to prohibit.

In fact, Defendant went so far as to establish a policy prohibiting accommodation of any impairment.  Loya was informed in late 2009 or early 2010 by Katie Stewart, Defendant's head of human resources, that DSI has a strict "zero tolerance" policy against accommodating employees' restrictions.  (Loya dep. p. 20-21).  If anybody had a restriction, they would be

required to stay home, regardless of whether they could perform their essential job duties.  (Loya dep. p. 22-23).  Even if Loya himself got hurt and had a restriction, but could still perform all of his desk duties, he would not be allowed to return to work and would have to stay home.  (Loya dep. p. 45).  Loya understood from his supervisors that if employees had any restrictions, they could not go back to work, and that is the "bottom line."  (Loya dep. p. 43).

This policy did not permit accommodation of any restriction:  DSI would not allow an employee with any restriction to return to work, and would make no effort to accommodate any restriction.  (Loya dep. p. 23).  This policy applied to both physical restrictions and scheduling restrictions; DSI would not accommodate any need for a schedule change or a physical limitation.  (Loya dep. p. 20-23, 30-31).

Although DSI has a written policy prohibiting discrimination on the basis of disability, Loya was never made aware of the policy.  (Loya dep. p. 39, 41).  He had no training on the policy, and nobody showed him the written form.  (Loya dep. p. 39).  Regardless of the anti-discrimination policy, he has been directed not to allow persons with restrictions to work, bar none.  (Loya dep. p. 43).  This anti-accommodation policy applies even if the restrictions are so extreme that they have no connection with the employee's job duties, such as a restriction against lifting more than 200 pounds.  (Loya dep. p. 43-44).  Despite the language of this disability discrimination policy, according to Loya, DSI does not try to accommodate disabilities and restrictions.  (Loya dep. p. 40).

The evidence that Defendant adopted a policy against accommodating any disability, and applied this policy to force Molina out, despite the fact that she was able to perform the essential duties of her position, is direct evidence that raises fact issues allowing a reasonable trier of fact to conclude that Molina's disability was a motivating factor in her termination.  Defendant's

14

motion for summary judgment should be denied.

     **3.**     ***McDonnell-Douglas* circumstantial evidence analysis.**

Even if the evidence in this case does not rise to the level of direct evidence, the circumstantial evidence at least raises fact issues for the jury.  In *McDonnell Douglas Corp. v. Green*, the United States Supreme Court articulated the well-tread path for proving discrimination by circumstantial evidence.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  The employee bears an initial burden of creating a prima facie case of discrimination.  The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the employment decision.  If it does so, the burden shifts back to the employee to rebut that explanation.  If the employee brings forward evidence allowing the jury to reject the employer's proffered basis for the employment decision as pretextual, the jury may find that discrimination was the true reason for its action.  *See McDonnell Douglas Corp.*, 411 U.S. at 802-05.

The evidence raises fact issues for the jury on the prima facie case of discrimination.  The only aspects of the prima facie case challenged by Defendant are that Molina was disabled, and that she was qualified for the position.  As detailed in sections B and C of this response, the evidence raises fact issues for the jury, at least, on this portion of the case.  Defendant is not entitled to summary judgment on this basis.

At the second stage of the *McDonnell-Douglas* analysis, the employer has the burden to come forward with evidence of a legitimate, nondiscriminatory reason for its action. If an employer provides a legitimate, nondiscriminatory reason for the employment action, the *McDonnell-Douglas* analysis proceeds to the third prong, allowing the employee to recover if she shows the employer's stated reason for its decision pretextual.

       Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional

discrimination, and it may be quite persuasive.  In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. . . .  Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision. Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.

*Reeves*, 530 U.S. at 147-48 (citations omitted).

Pretext may be shown either directly, by showing that a discriminatory reason more likely motivated the employer; or indirectly, by showing that the employer's proffered reason is unworthy of credence.  *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).  An employee establishes pretext by revealing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered reasons for its actions that a reasonable factfinder could find them unworthy of credence.  *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1198 (10th Cir. 2000).

Defendant's stated reason for the termination is its claim that Molina was unable to return to work without lifting restrictions after her involuntary FMLA leave expired.  The evidence allows a jury to find that this was not a legitimate, nondiscriminatory reason for the termination, or was a pretextual reason for the termination, because Molina's lifting restrictions actually did not prevent her from performing her duties. Section C of this response describes in detail the evidence that, despite Defendant's claim, Molina's lifting restrictions did not prevent her from performing the duties of her position, and in fact, she actually performed her duties with restrictions on several occasions before her involuntary leave, including during the two months before she was placed on leave.

This evidence that Defendant's stated reason was pretextual should also be considered in

light of the testimony that Defendant attempted to justify its decision by claiming that company policy prohibited her from working with restrictions, but did not point her to any such written policy.  (Molina dep. p. 193-94, Loya dep. p. 90, 99).  The written job description indicates, contrary to that claim, that physical impairments may be accommodated.  (Molina dep. ex. 9).  These circumstances allow a reasonable trier of fact to reject the argument that Molina was terminated because of the neutral application of some neutral corporate policy.

Additional evidence of disability discrimination arises from the fact that, although it pays lip service to discrimination laws by adopting a written non-discrimination policy, Defendant does not train its managers on that policy.  Loya was never made aware of the policy.  (Loya dep. p. 39, 41).  He had no training on the policy, and nobody showed him the written form.  (Loya dep. p. 39).  Despite the language of this disability discrimination policy, according to Loya, DSI does not try to accommodate disabilities and restrictions.  (Loya dep. p. 40).

Taken as a whole, the evidence allows a reasonable trier of fact to reject Defendant's claimed reason for terminating Molina as pretextual, and conclude that her disability was a motivating factor in her termination.  Defendant's motion for summary judgment should be denied.

**F.    The evidence raises genuine fact issues on whether Plaintiff was terminated in retaliation for her opposition to discrimination.**

Finally, Defendant moves for summary judgment on Plaintiff's retaliation claim.  The only aspect of the prima facie case of retaliation challenged by Defendant's motion is the existence of a causal connection between her protected activity, and her termination.  In its argument, Defendant confuses the ultimate fact of retaliation with a plaintiff's minimal burden at the prima facie stage of the case.  Only a minimal showing is required to establish a prima facie case.  *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981) ("The

burden of establishing a prima facie case of disparate treatment is not onerous"); *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999)("Only a minimal showing is necessary to meet this burden").   At this threshold stage, the standard for showing a causal relationship between protected conduct and an adverse employment action is "much less stringent" than a "but for" causation standard. *Fierros v. Texas Dept. of Health*, 274 F.3d 187, 191 (5th Cir. 2001). A plaintiff may establish the prima facie case of retaliation by showing that the protected conduct and the adverse employment action were "not completely unrelated."   *Mauder v. Metropolitan Transit Authority of Harris County, Tex.*, 446 F.3d 574, 583 (5th Cir. 2006)

While temporal proximity alone does not establish the ultimate fact of but-for causation in a retaliation case, it is not irrelevant; it remains probative of a retaliatory motive. *Strong v. University Healthcare Sys., LLC*, 482 F.3d 802 (5th Cir. 2007); *Smith v. Xerox Corp.*, 2010 WL 1141674 at *4 (5th Cir. 2010). In examining whether a plaintiff has carried her minimal burden at the prima facie stage of the case, a short lapse of time between a protected activity and an adverse employment action may alone establish the prima facie case. *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001).  A "time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes." *Id.*  The temporal proximity between Molina's protected conduct and her termination is alone sufficient to establish the prima facie case.

Defendant's stated reason for terminating Molina is pretextual, as detailed in the previous section of this response, permitting the jury to infer the ultimate fact of retaliation.  Additional evidence of retaliation arises from the testimony that another employee with restrictions, Jose Luis Urrieta, was treated more favorably than she was.  Urrieta also had a back injury.  (Loya dep. p. 24-25).  Like Molina, he was a patient care tech.  (Loya dep. p. 25).  Like Molina, he had

lifting restrictions.  (Loya dep. p. 25).  He was off work because of the restriction for four to five months.  (Loya dep. p. 25).  Unlike Molina, he was not terminated after twelve weeks of leave; his position was kept open for him and he was allowed to return.  (Loya dep. p. 25-26).  The proof that the stated reason for the termination was pretextual, together with the evidence that Defendant allowed another patient care technician with lifting restrictions to take more than twelve weeks of leave, and protected his position for him while he was out, allows a reasonable jury to conclude that Molina's exhaustion of her involuntary FMLA leave was not the only reason for her termination; and, in combination with the prima facie case, permits a reasonable trier of fact to conclude that retaliation was the reason for Defendant's employment action. Defendant is not entitled to summary judgment on the retaliation claim.

FOR THESE REASONS, Defendant's motion for summary judgment should be denied.

Respectfully submitted,


/s/ John A. Wenke
**JOHN A. WENKE**
Attorney for Plaintiff
State Bar No. 00788643
501 E. California Ave.
El Paso, Texas 79902
Telephone:  (915) 351-8877
Facsimile:  (915) 351-9955

## CERTIFICATE OF SERVICE

I certify that on October 3,  2011, I electronically filed the foregoing with the clerk using the CM/ECF system, which will send notification of such filing to **Michael W. Fox**, Ogletree Deakins Nash Smoak & Stewart, PC, 301 Congress Ave., ste. 1150, Austin, TX 78701, Attorney for Defendant.


/s/ John A. Wenke
**JOHN A. WENKE**